FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

FEB 2 5 2025

MITCHELL R. ELFERS
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CRIMINAL NO. 25-318 JB |
| | ) | |
| vs. | ) | Count 1: 18 U.S.C. § 1951(a): |
| | ) | Conspiracy to Commit Interference with |
| **JEFFREY HAMMEREL**, | ) | Commerce by Extortion Under Color of |
| | ) | Official Right; |
| Defendant. | ) | |
| | ) | Counts 2 and 3: 18 U.S.C. § 1951(a): |
| | ) | Interference with Commerce by Extortion |
| | ) | Under Color of Official Right; and |
| | ) | |
| | ) | Counts 4 and 5: 18 U.S.C. § |
| | ) | 666(a)(1)(B): Receiving a Bribe as an |
| | ) | Agent of an Organization Receiving |
| | ) | Federal Funds. |

## INFORMATION

The United States Attorney charges:

### Introduction

At all times relevant to this Information:

### New Mexico Driving While Intoxicated (DWI) Laws

1. New Mexico has a series of state laws designed to target the unlawful driving of vehicles while under the influence of alcohol or drugs. *See* New Mexico Statutes Annotated (NMSA) 1978, § 66-8-101, *et seq.* (2016). Under New Mexico state law, a person has committed DWI if they operated a vehicle while impaired to the slightest degree, *see* NMSA 1978, § 66-8-102(A) (2016), or with a blood alcohol concentration (BAC) greater than .08, *see* NMSA 1978, § 66-8-102(C). A person has committed aggravated DWI if (1) their BAC is .16 or greater, (2) they caused injury as a result of their unlawful operation of a motor vehicle, or (3) they refused

to submit to blood or breath testing. *See* NMSA 1978, §§ 66-8-102(D), 66-8-107(A). (Collectively, these are referred to as DWI Offenders.)

2. DWI offenses that do not involve injury or death to another are generally misdemeanors, unless the offender has at least three prior DWI convictions (resulting in the next DWI arrest being a state felony). *See* NMSA 1978 at § 66-8-102(F)-(K). The range of imprisonment depends on an offender's prior DWI conviction history, but all DWI convictions require payment of associated court fees in addition to potential fines. Additionally, if a person is convicted of DWI, they must have an ignition interlock installed in their vehicle (or in any vehicle driven by them).

3. To initiate a state court misdemeanor DWI offense, the arresting officer either files a criminal complaint immediately following the arrest and takes the offender into custody, *see* New Mexico State Court Rules (NMRA) 7-201, or later files a criminal complaint but seeks a summons from the state court, *see id.*, *see also* NMRA 7-204. If the DWI Offender is hospitalized or otherwise unable to be taken into custody immediately following the DWI incident, the officer may later file the criminal complaint and seek a summons from the court.

4. Prior to March 2022, once the New Mexico state criminal DWI charges were initiated, all parties, including a defendant, were entitled to conduct a pretrial interview (PTI) of all witnesses, including law enforcement officers. *See* NMRA 7-504(1). To arrange the PTI, the parties were required to confer and agree in good faith to arrange a date and location for the PTI. If that was unsuccessful, defense counsel could seek a subpoena from the state court for a PTI. Typically, the initial PTI would be arranged at the law enforcement office and, if the officer did not attend, defense counsel could request a subpoena for the PTI at another location, including the defense attorney's law firm. On March 24, 2022, the New Mexico State Supreme Court entered an order temporarily suspending all PTIs in cases occurring in the Bernalillo County

Metropolitan Court, which included all misdemeanor DWI arrests in Bernalillo County. *See* New Mexico Supreme Court Order NO. 22-8500-016. Because of this, since March 2022, there have not been PTIs for misdemeanor DWI cases that occur in Bernalillo County.

<u>New Mexico Motor Vehicle Division (MVD) Administrative Proceedings</u>

5. For DWI Offenders with New Mexico driver's licenses, in addition to the criminal case, there is a separate administrative process handled by the New Mexico MVD to determine if the DWI Offender's driver's license should be revoked (the "MVD hearing"). *See* NMSA 1978, § 66-8-111. Under New Mexico state law, the officer must immediately provide the DWI Offender written notice of revocation of the DWI Offender's driver's license and of the right to an administrative hearing. *See id.* at § 66-8-111.1(A). This written notice serves as the offender's temporary license for twenty days or, if the DWI Offender requests an administrative hearing, until after the order is entered following that hearing. *See id.* at § 66-8-111.1(B). If the DWI Offender requests a hearing, an administrative hearing is held, at which the officer must appear and provide testimony that there were "reasonable grounds to believe that the person had been driving a motor vehicle within this state while under the influence of intoxicating liquor or drugs", the DWI Offender was arrested, and the results of the blood or breath test (or refusal). *See id.* at § 66-8-112(F). If the officer does so, the MVD then suspends the DWI Offender's driver's license.

<u>New Mexico DWI Law Enforcement</u>

6. Multiple policing agencies share in the enforcement of DWI laws within and around the Albuquerque area including, but not limited to, the Albuquerque Police Department (APD), the New Mexico State Police (NMSP), and the Bernalillo County Sheriff's Office (BCSO). Each agency has its own internal guidelines related to officer and deputy conduct and behavior.

7. BCSO has a Code of Conduct that provides, "Personnel shall conduct themselves both on and off-duty in such a manner as to reflect most favorably on the Department." BCSO Code of Conduct 109-1(F). The Code prohibits conduct that "could bring the Office and/or individual Deputy or employee into disrepute based on actions or behaviors displayed by the employee" and that "impairs the operation or efficiency of the Office." BCSO Code of Conduct 109-1(G).

### The Defendant

8. At all times material to this Information, defendant **JEFFREY HAMMEREL** was a sworn law enforcement officer with BCSO. **HAMMEREL** joined BCSO and became a sworn law enforcement officer in 2010. **HAMMEREL** was assigned to work in the DWI unit in 2013.

### Count 1

### Conspiracy to Interfere with Commerce by Extortion Under Color of Official Right

9. The allegations set forth in paragraphs 1 through 8 of this Information are realleged and incorporated herein by reference.

10. From on or about October 10, 2017, through on or about January 18, 2024, in Bernalillo County, in the District of New Mexico, the defendant, **JEFFREY HAMMEREL**, unlawfully, knowingly, and intentionally combined, conspired, confederated, agreed, and acted interdependently with other persons to commit an offense defined in 18 U.S.C. § 1951(a), specifically interference with commerce by extortion under color of official right.

### The Object of the Conspiracy

11. The object of the conspiracy was for **HAMMEREL** and other sworn law enforcement officers (the "Conspiring Officers") to agree to act, or to fail to act, to ensure DWI Offenders that they arrested for DWI and who retained **THOMAS J. CLEAR III** avoided

4

criminal and administrative remedies related to their DWI arrests in exchange for items of value provided by CLEAR in coordination with RICARDO MENDEZ.

### Manner and Means of the Extortion Conspiracy

12. The object of the conspiracy was accomplished as follows:

   a. CLEAR, a lawyer, owned a criminal defense law firm located in Albuquerque, New Mexico, that specialized in DWI defense. CLEAR appeared at the criminal and administrative settings for cases that were part of the scheme and moved to dismiss the proceedings based on the Conspiring Officers' intentional failures to appear at required settings.

   b. MENDEZ worked for CLEAR's law firm as an investigator and handled the day-to-day coordination of the scheme.

   c. **HAMMEREL** was a Conspiring Officer and participated in the extortion conspiracy by agreeing to intentionally fail to appear at required criminal and administrative settings associated with the DWI-related arrest knowing that his non-appearance would allow CLEAR to move to dismiss the proceedings.

   d. To execute the scheme, the co-conspirators developed a system to coordinate the scheduling of the MVD hearing and criminal settings for DWI Offenders who retained CLEAR to ensure that the Conspiring Officers, including **HAMMEREL**, would be able to miss the required settings, which, in turn, allowed CLEAR to use the Conspiring Officer's failure to appear as a basis to request dismissal of the proceeding (even though CLEAR was aware that the Conspiring Officer had been paid by CLEAR and MENDEZ to not appear).

   e. The DWI Offenders, both aware and unaware of the scheme, retained CLEAR as their attorney following their DWI arrests. CLEAR and/or MENDEZ consulted with the DWI Offender and strongly encouraged that the attorney retainer fee be paid in cash. When the DWI Offender paid the cash retainer, CLEAR and MENDEZ were paid cash in addition to

5

their law firm salary. In addition, the Conspiring Officers were often paid in cash close in time to the date of a DWI Offender's arrest but, at times, also received other benefits and things of value, including but not limited to free legal services, gift cards, hotel rooms, and other gifts. MENDEZ typically handled communications with the Conspiring Officers to negotiate payment amounts and to arrange meetings to exchange payments. However, on occasion, CLEAR paid the conspiring officers directly.

      f.      In terms of the payment amount that **HAMMEREL** and other Conspiring Officers received, there was generally a set amount, but there were also exceptions depending on various factors, including the circumstances of the DWI arrest, the DWI Offender's criminal history (specifically if the offender was facing felony DWI charges based on their prior DWI convictions), the amount of money the DWI Offender appeared to have, and the DWI Offender's personal relationship to the co-conspirators.

      g.      Once the DWI Offender retained CLEAR as their attorney, CLEAR, MENDEZ, and the Conspiring Officer, including **HAMMEREL**, would coordinate the Conspiring Officer's non-appearance at required settings on the state criminal case and the MVD administrative proceeding. When the Conspiring Officer failed to appear as arranged, CLEAR moved to dismiss the criminal case and the MVD proceeding. Because the Conspiring Officer was a necessary witness and did not appear as required, the case and proceeding would be dismissed. Because the state criminal charges were dismissed, the fines, fees, and interlock requirement that would otherwise have applied to the DWI conviction were not imposed. In addition, the DWI Offender's driver's license was not revoked, allowing the DWI Offender to continue to drive without restriction.

      h.      As to state criminal cases prior to March 2022, CLEAR, MENDEZ, and the Conspiring Officers, including **HAMMEREL**, agreed that the Conspiring Officers would not

appear at the PTIs (either the initial PTI at the law enforcement office or the subpoenaed PTI). Before March 2022, an officer missing a PTI, or multiple PTIs, typically guaranteed the dismissal of a DWI case because, once requested by a defendant, officer PTIs became a required part of state court discovery. Dismissal of the state criminal case often occurred as a sanction for the State's discovery violation.

      i.      The suspension of PTIs in misdemeanor DWI cases in March 2022 altered how CLEAR, MENDEZ, and the Conspiring Officers, including **HAMMEREL**, worked to guarantee dismissal of state criminal DWI-related offenses. No longer able to manipulate appearances at PTIs, CLEAR, MENDEZ, and the Conspiring Officers, including **HAMMEREL**, agreed that the Conspiring Officers would not appear at the criminal DWI motion hearings or trial settings. When the Conspiring Officers failed to appear at court, CLEAR moved to dismiss the case because a necessary witness for the state would not be present.

      j.      Conspiring Officers, including **HAMMEREL**, retained MVD paperwork and driver's licenses. Typically, MENDEZ would obtain the driver's licenses from the Conspiring Officers, including **HAMMEREL**. CLEAR and/or MENDEZ would then show the DWI Offender their driver's license (which had been seized in connection to the DWI arrest) when meeting with the DWI Offender at CLEAR's law firm. CLEAR and/or MENDEZ would then inform the DWI Offender that, if they hired CLEAR as their attorney, they would not have to worry about the DWI arrest. At times, CLEAR and/or MENDEZ would guarantee that the DWI criminal case and MVD process would be dismissed. If the DWI Offender did not retain CLEAR as their lawyer, the Conspiring Officer typically proceeded with the DWI case as required, thereby usually securing a DWI conviction against the DWI Offender.

      k.      To ensure successful operation of the scheme, MENDEZ contacted persons in authority at BCSO, including a supervisory BCSO deputy, to ensure that participating

7

Conspiring Officers, including **HAMMEREL**, would not get in trouble for failing to appear at required settings. Co-conspirator 1, a supervisory BCSO deputy, then provided assurances to the Conspiring Officers, including **HAMMEREL**, that they would not get in trouble in connection with their failing to appear at required settings.

      l.      Co-conspirators' conduct in perpetuating the conspiracy affected commerce.

      m.      Co-conspirators frequently used coded language in their communications to avoid detection and criminal prosecution.

In violation of 18 U.S.C. § 1951(a)

## Interference with Commerce by Extortion Under Color of Official Right

### Count 2

13. The allegations set forth in paragraphs 1 through 12 of this Information are realleged and incorporated herein by reference.

14. In December 2021, **JEFFREY HAMMEREL,** a sworn law enforcement deputy with BCSO, arrested S.C. and charged them by criminal complaint with DWI. S.C. hired CLEAR to represent them in their DWI case. After S.C. hired CLEAR, **HAMMEREL** agreed to accept and accepted property in concert with CLEAR and MENDEZ to which **HAMMEREL** was not due in his role as a sworn law enforcement deputy.

15. The property **HAMMEREL** agreed to accept and accepted was given to him in exchange for his agreement to act, or to fail to act, in such a way that S.C. would avoid criminal and administrative consequences related to their DWI arrest.

16. S.C. gave the property with consent.

17. All charges related to S.C.'s DWI case were dismissed in April 2022.

18. From on or about December 10, 2021, to on or about April 13, 2022, in Bernalillo County, in the District of New Mexico, the defendant, **JEFFREY HAMMEREL**, knowingly attempted to obstruct, delay, and affect in any way and degree commerce and the movement of articles and commodities in such commerce by extortion, in that the defendant attempted to obtain property consisting of U.S. currency not due **HAMMEREL** or his office from S.C. with S.C.'s consent, under color of official right.

In violation of 18 U.S.C. § 1951(a).

### Count 3

19. The allegations set forth in paragraphs 1 through 18 of this Information are realleged and incorporated herein by reference.

20. In May 2022, **JEFFREY HAMMEREL**, a sworn law enforcement deputy with BCSO, arrested M.M. and charged them by criminal complaint with DWI. M.M. hired CLEAR to represent them in their DWI case. After M.M. hired CLEAR, **HAMMEREL** agreed to accept and accepted property in concert with CLEAR and MENDEZ to which **HAMMEREL** was not due in his role as a sworn law enforcement deputy.

21. The property **HAMMEREL** agreed to accept and accepted was given to him in exchange for his agreement to act, or to fail to act, in such a way that M.M. would avoid criminal and administrative consequences related to their DWI arrest.

22. M.M. gave the property with consent.

23. All charges related to M.M.'s DWI case were dismissed in December 2023.

24. From on or about May 13, 2022, to on or about December 20, 2023, in Bernalillo County, in the District of New Mexico, the defendant, **JEFFREY HAMMEREL**, knowingly attempted to obstruct, delay, and affect in any way and degree commerce and the movement of articles and commodities in such commerce by extortion, in that the defendant attempted to

obtain property consisting of U.S. currency not due **HAMMEREL** or his office from M.M. with M.M.'s consent, under color of official right.

In violation of 18 U.S.C. § 1951(a).

### Counts 4 and 5

### Bribery

25. The allegations set forth in paragraphs 1 through 24 of this Information are realleged and incorporated herein by reference.

26. At all times material this Information, BCSO was a local government agency of the County of Bernalillo, a local government located within the District of New Mexico.

27. BCSO received benefits of more than $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, and insurance during the following one-year periods:

   a. March 1, 2021, through February 28, 2022; and

   b. March 1, 2022, through February 28, 2023.

28. At all times material to this Information, **JEFFREY HAMMEREL** was employed as sworn law enforcement deputy with BCSO and assigned to the DWI unit. As a sworn law enforcement officer with BCSO, **HAMMEREL** was an agent of BCSO.

29. As a sworn law enforcement deputy with BCSO, **HAMMEREL** was required to "conduct themselves both on and off-duty in such a manner as to reflect most favorably on the Department." In his role as a sworn law enforcement officer assigned to BCSO's DWI Unit, **HAMMEREL**'s duties included, among other things, cooperating fully in all aspects of the judicial process, including appearing at court hearings, pretrial interviews and MVD hearings.

## Count 4

30. The allegations set forth in paragraphs 1 through 29 of this Information are realleged and incorporated herein by reference.

31. Between March 1, 2021, and February 28, 2022, **JEFFREY HAMMEREL** received and accepted U.S. currency payments and things of value from THOMAS J. CLEAR III and RICARDO MENDEZ related to DWI cases for at least one DWI Offender in a series of transactions involving in excess of $5,000.

32. From in or about March 2021 to in or about February 2022, in Bernalillo County, in the District of New Mexico, the defendant, **JEFFREY HAMMEREL**, corruptly solicited, demanded, accepted, and agreed to accept a thing of value from a person with the intent to be influenced and rewarded in connection with a transaction and series of transactions involving $5,000 or more.

In violation of 18 U.S.C. § 666(a)(1)(B).

## Count 5

33. The allegations set forth in paragraphs 1 through 32, of this Information are realleged and incorporated herein by reference.

34. Between March 1, 2022, and February 28, 2023, **JEFFREY HAMMEREL** received and accepted U.S. currency payments and things of value from THOMAS J. CLEAR III and RICARDO MENDEZ related to DWI cases for at least four DWI Offenders in a series of transactions involving in excess of $5,000.

35. From in or about March 2022 to in or about February 2023, in Bernalillo County, in the District of New Mexico, the defendant, **JEFFREY HAMMEREL**, corruptly solicited, demanded, accepted, and agreed to accept a thing of value from a person with the intent to be

influenced and rewarded in connection with a transaction and series of transactions involving $5,000 or more.

In violation of 18 U.S.C. § 666(a)(1)(B).

HOLLAND S. KASTRIN
Acting United States Attorney

*[signature]*

SHANA B. LONG
KATHERINE L. LEWIS
Assistant United States Attorneys
201 Third Street, Suite 900
Albuquerque, New Mexico 87103
(505) 346-7274